IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs October 23, 2012

## DEMETRIUS BYRD v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Hamilton County
No. 277787    Barry A. Steelman, Judge

No. E2012-00070-CCA-R3-PC - Filed January 31, 2013

Petitioner, Demetrius Byrd, appeals the dismissal of his petition for post-conviction relief from felony drug convictions in which he alleged that his guilty plea was unknowingly and involuntarily entered due to the ineffective assistance of trial counsel.  More specifically he contends that (1) trial counsel failed to properly investigate his case to determine that Petitioner's co-defendant, Dominic Jones, pled guilty to the cocaine offense under a separate indictment and accepted full responsibility for the offense; and (2) trial counsel insisted that he plead guilty to avoid federal prosecution.  After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

 Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, Demetrius Byrd.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bret Alexander, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Background

At the plea submission hearing, the Assistant District Attorney General gave the following information as a factual basis for the plea in Case No. 268737:

> [T]he State would have shown on November 14th of 2007, [Petitioner] was driving a vehicle in Hamilton County. At 2700 Long Street, he was stopped for a traffic infraction.
>
> During a search of the vehicle, the officers found a, an amount of marijuana more than 28 grams - - let me find the exact amount, Judge - - 18.9 grams, Judge, I'm sorry, 18.9 grams, and [Petitioner] was placed in custody for felony possession of marijuana.

Additionally, the Assistant District Attorney General gave the following information as a factual basis for the plea in Case No. 268200:

> The State would have shown on January 6th of 2008, [Petitioner] was driving a vehicle here in Hamilton County. Police were behind the vehicle and they saw a baggie with a white cocaine cookie fly out the window. The car was traveling at a high rate of speed when the police were behind it.
>
> They pulled the car over, recovered the cocaine and placed [Petitioner] under arrest for felony possession of cocaine.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner entered into evidence the following factual basis for the plea on June 17, 2010, by co-defendant Dominic Donta Jones for the events occurring on January 6, 2008, as recited by the Assistant District Attorney General at Mr. Jones' guilty plea submission hearing:

> [T]he State would show on January 6th of 2008, here in Hamilton County, Mr. Jones was a passenger in a vehicle that was speeding. Officer Crider with CPD had attempted to pull that car over. The window came down and a clear plastic baggie with a white substance was thrown out the window. That was later recovered and determined to be cocaine. That came out of a window

-2-

where Mr. Jones was sitting, and he did possess that cocaine with the amount an indicia that it would be for resale, and it's charged as a B felony but we're reducing it as part of the plea to a C felony.

Trial counsel testified that he was appointed to represent Petitioner on May 20, 2009. Prior to his appointment, Petitioner had been represented by the public defender's office "for a substantial period of time" but had to withdraw as counsel. He said that Petitioner pled guilty to two felonies, and Petitioner received suspended sentences for the offenses. Trial counsel was aware that a co-defendant was also charged in the case, and he spoke with co-defendant's counsel about the case, and they viewed the videotape of the traffic stop. He was not aware if the co-defendant pled guilty and accepted responsibility for the cocaine offense. Trial counsel testified a motion to suppress was filed, heard, and denied before he began representing Petitioner and that he reviewed the motion after he was appointed.

Trial counsel did not recall any interest in Petitioner by the federal authorities. He met with Petitioner on several occasions in court, and he went out "to the facility once or twice and met with him." He did not recall "that there were any federal implications concerning [Petitioner]." Trial counsel testified:

What I typically do - - and I've looked through my notes - - is I make my clients aware of the potential - - in cases like this, where I recognize that there might be a federal problem in the future, I just make them aware of the potential that, you know, irrespective of what we do in State Court, there could be a federal issue crop up later, but I don't really get into specifics about that.

He specifically denied telling Petitioner that he needed to plead guilty to avoid "federal consequences in this particular case[.]" Trial counsel did not recall a conversation with Petitioner as to whether his co-defendant had purportedly pled guilty.

On cross-examination, trial counsel testified that it was possible Petitioner's co-defendant pled guilty after Petitioner's guilty plea. He did not know "either way," and would have to rely on the records of the court clerk's office. Trial counsel agreed that Petitioner's guilty plea occurred on September 29, 2009. He was not aware of any reservations on Petitioner's part about entering the plea. Trial counsel testified that he was "a bit surprised" at the State's offer, and he felt that it was a fair offer. He unequivocally denied that there was a conversation with Petitioner indicating that if Petitioner did not plead guilty, the federal authorities would take the case, and Petitioner would face greater consequences. Trial counsel felt that Petitioner's guilty plea was knowing and voluntary.

Petitioner testified that he was in custody on a probation revocation while being represented by the public defender's office for the offenses in this case. He met with an assistant public defender numerous times and that person told him that the federal authorities were going to "pick up" his case. He then "flattened" the sentence for the probation revocation and made bond on the present offenses. Petitioner testified that after trial counsel began representing him, they met one time in trial counsel's office. Although he saw trial counsel on court dates, they did not discuss the facts of his case.

Petitioner testified that during the meeting in trial counsel's office, trial counsel said that the State had not made a plea offer and that the "feds may still be going to pick the case up." He said that during a court date on September 29, 2009, trial counsel advised him that the State had offered him three years on unsupervised probation. Petitioner testified that he did not want to accept the offer. He claimed that trial counsel then said,

> "Well, I don't want" - - "I don't want to say that the fed" - - I mean, that this will coerce - - I mean, that this will make the D.A. turn the case over to the feds, but my understanding that if you don't plead out, that he could turn it over to the feds, and I pled it out.

Petitioner testified that he felt his only option was to "plea out to three years probation if I ain't [sic] want to do federal time."

Petitioner testified that at the time of the cocaine offense, Dominic Jones threw some crack cocaine out the passenger window of Petitioner's vehicle. He said that Mr. Jones ultimately pled guilty in this case and accepted responsibility. This occurred after Petitioner had already pled guilty. Petitioner testified:

> But, but from my understanding, the day that I pled out, he was supposed to be pleading out, too. I mean, he, he was supposed to already have pled [sic] out, but I came in here and went on ahead with my hearing or whatever, but he had a, I want to say attempted murder charge pending, but had two separate lawyers. So I guess his lawyer on his attempted murder wasn't ready to settle the case then, so they end up putting his case off.

Concerning this matter, Petitioner further testified:

> I was just like, when he first approached me, I was like, "I don't want to plea out to it," or whatever, and he was like - - and I was like, and I was like [sic], "Has Dominic pled out to it already?"

-4-

He was like, "He's going to plead out today." And I was like, "I don't want to plead out until he" - - and then, that's when he was like - - you know what I'm saying? - - I be, I be [sic] making the D.A. forced to turn it over to the federal authorities

Petitioner testified that he felt coerced in accepting the plea because trial counsel said that his case could be turned over to the federal authorities.

On cross-examination, Petitioner testified that someone from the public defender's office had reviewed some of the proof with him, and a motion to suppress was filed. After a hearing, the motion was denied. Petitioner testified that there were fifteen months of activity on his case while he was represented by the public defender's office, and there were discussions between that office and the district attorney general's office about the case. At some point, trial counsel was appointed to the case due to a conflict of interest with the public defender's office. Petitioner testified that he and trial counsel never discussed his motion to suppress, and to his knowledge, trial counsel was not given any documents from the public defender's office. He admitted that trial counsel received the only plea offer in his case, and it was for a suspended sentence. Petitioner accepted the offer and entered the plea on September 29, 2009.

Petitioner admitted that during the guilty plea submission hearing, the trial court informed him that the judgments in his case could be used against him in the future to increase his punishment, and he told the court that he understood. He told the trial court that no one forced or coerced him into pleading guilty and that he did not have any questions; however, he said that he asked trial counsel "something about less than .5 grams or something like that." Petitioner also listened to the factual basis for the guilty pleas and told the trial court that he was guilty of the offenses.

Petitioner testified that he met with trial counsel in trial counsel's office prior to entering the plea, and he did not have any personal knowledge of how much work trial counsel put into his case. He said:

But when I went to meet him, he had nothing too much to say about the case. He more asked me about the case, and just was like, he still haven't got a offer yet because - - you know what I'm saying? - - the federal authorities was still trying to see was they going to pick it up or not. But we, we didn't elaborate on, on what had happened or nothing like that because he really didn't know too much at the time.

Petitioner testified that during the fifteen months that he was represented by the public defender's office, he was worried about the possibility of receiving federal charges. He and the assistant public defender handling his case never discussed how pleading guilty in state court would affect him in federal court. Petitioner testified that he was more worried about whether the federal authorities were "going to pick it up or not." He said that at every court date, the assistant public defender handling his case would tell him that the federal authorities were "still looking at picking it up and she'll send me back down, or she'll be like, 'Well, I set it off because they still looking at it to pick it up." Petitioner testified that they "never just talked about it." He claimed that he never thought about the implications of his state case in federal court.

Petitioner testified that trial counsel never discussed the possibility of the federal government taking over the case and how it would affect Petitioner. He said that trial counsel only told him that if he did not accept the State's offer, the district attorney's office would be forced to turn his case over to the federal authorities. Petitioner admitted that he pled guilty to a crack cocaine offense in federal court, which was then set for a sentencing hearing. He agreed that the presentence report for the federal plea indicated that his sentence would be enhanced by the state charges. He further admitted that he faced a "pretty high" sentence.

On redirect examination, Petitioner testified that he had an additional felony consisting of an aggravated assault. He claimed that he would not have pled guilty if he had not felt threatened about the federal charges. He would have "kept trying until [he] got the charge dismissed" or he would have gone to trial. Petitioner testified that he filed his post-conviction petition long before he entered his guilty plea in federal court. The post-conviction court denied the Petitioner relief.

## III. Standard of Review

On appeal, Petitioner asserts that he received ineffective assistance of counsel in association with his guilty plea because trial counsel failed to properly investigate his case to determine that Petitioner's co-defendant pled guilty to the cocaine offense under a separate indictment and accepted full responsibility for the offense; and trial counsel insisted that he plead guilty to avoid federal prosecution. In a claim for post-conviction relief, the petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn.Code Ann. § 40-30-103. Petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). The post-conviction court's factual findings "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Upon review, this court

will not reweigh or reevaluate the evidence below, and all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court, not this court. *Momon v. State*, 18 S.W.3d 152,156 (Tenn. 1999).

On appeal, the post-conviction court's findings of fact are entitled to substantial deference and are given the weight of a jury verdict. They are conclusive unless the evidence preponderates against them. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). A post-conviction court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001). Our supreme court has "determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, ... thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief based on the alleged ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient, and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id*. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective

assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

First, Petitioner argues that trial counsel failed to properly investigate his case to determine that Petitioner's co-defendant, Dominic Jones, pled guilty to the cocaine offense under a separate indictment and accepted full responsibility for the offense. Concerning this issue, the post-conviction court found:

> Counsel and the petitioner did meet, though, perhaps because of the relatively late substitution of counsel, many or most of their meetings were in court. In any event, apparently, counsel did not overlook any evidence or witness. Although another person did eventually plead guilty to possession of cocaine for resale, neither the plea nor, apparently, any other statement excludes the possibility of the petitioner's joint possession of cocaine. Nor did the other person plead guilty to possession of marijuana. The Court therefore finds that any deficiency in counsel's performance in these respects was not prejudicial.

The record in this case supports the post-conviction court's findings. Trial counsel was aware that co-defendant Jones was also charged in the case, and he spoke with co-defendant's counsel about the case, and they viewed the videotape of the traffic stop. He was not aware if co-defendant Jones pled guilty and accepted responsibility for the cocaine offense. Trial counsel did not recall a conversation with Petitioner as to whether co-defendant Jones had purportedly pled guilty. He testified that it was possible co-defendant Jones pled guilty after Petitioner's guilty plea. He did not know "either way," and would have to rely on the records of the court clerk's office. Trial counsel agreed that Petitioner's guilty plea occurred on September 29, 2009. He was not aware of any reservations on Petitioner's part about entering the plea. Trial counsel testified that he was "a bit surprised" at the State's offer, and he felt that it was a fair offer.

As pointed out by the State, co-defendant Jones pled guilty on June 17, 2010, after Petitioner had entered his guilty plea. Therefore, it is irrelevant as to whether trial counsel failed to investigate his case to determine whether co-defendant Jones had pled guilty and accepted full responsibility for the cocaine offense. Furthermore, even if co-defendant Jones had pled guilty before Petitioner entered his plea, this would not mean that co-defendant Jones "fully accepted responsibility for the cocaine and exculpated Petitioner of any involvement in same." The recitation of facts by the State at co-defendant Jones' guilty plea submission hearing merely indicated that co-defendant Jones was a passenger in a vehicle that was speeding. When the police officer attempted to pull that car over, "the window came down and a clear plastic baggie with a white substance was thrown out the window." It was later recovered and determined to be cocaine. The baggie came out of a window where co-defendant Jones was sitting. The prosecutor stated at the plea hearing that co-defendant Jones "did possess that cocaine with the amount an indicia [sic] that it would be for resale, and it's charged as a B felony but we're reducing it as part of the plea to a C felony." As found by the post-conviction court and pointed out by the State, this does not preclude the possibility that Petitioner was also in constructive possession of the cocaine. In order for a person to "constructively possess" a drug, that person must have " 'the power and intention at a given time to exercise dominion and control over ... [the drugs] either directly or through others.'" *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). Additionally, "it may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. Furthermore, Petitioner listened to the factual basis for the guilty pleas in his case, and he told the trial court at the guilty plea submission hearing that he was guilty of the offenses.

Petitioner has failed to carry his burden of proof on this allegation by clear and convincing evidence, and he is not entitled to relief.

Next, Petitioner contends that trial counsel was ineffective for urging him to plead guilty to the offenses in order to avoid federal prosecution. Concerning this issue, the post-conviction court found:

> The Court understands the petitioner to allege that counsel did not understand and correctly convey the representation of the federal prosecutor's office to [the assistant district attorney general] that it did not intend to charge him for the offenses in issue but would seek an indictment for other drug offenses, advising him instead that the office had threatened to indict him if he did not plead guilty and thereby coercing him to plead guilty, though it was not in his best interest to do so and was the cause of the enhancement of federal

sentences. The Court accredits counsel's account that the petitioner did not express any reservations about the plea offer. The petitioner himself admits that the offer of probation was a relief in part because it was an indication that federal prosecution was unlikely and all but admits that he was willing to plead guilty if the other person did so too. The Court therefore finds no deficiency in counsel's performance in this respect.

The post-conviction court further noted:

The Court had already found that counsel did not threaten the petitioner with federal prosecution, and most of the other circumstances of the pleas suggest that they were voluntary and intelligent: his prior conviction for aggravated assault, his awareness of the advantages of the plea offer, including probation, and the disadvantages of the plea offer, including the general sentence-enhancing potential of the pleas, his satisfaction with and the effectiveness of counsel, and the lack of a defense that he was not in sole or joint possession of the contraband.

While, absent more specific advice, the petitioner was perhaps not aware of the precise sentence-enhancing effect of the pleas in the apparently not-then-pending federal cases, he did seem to be aware of the ongoing possibility of federal prosecution on other charges. Thus, even if the advice about the sentence-enhancing potential of the pleas was general, the petitioner did not have reason to regard it as abstract. The Court finds that the pleas were a voluntary and intelligent choice between the courses of action open to the petitioner.

The record in this case does not preponderate against the trial court's findings. Trial counsel did not recall any interest in Petitioner by the federal authorities, and he did not recall "that there were any federal implications concerning [Petitioner]." Trial counsel testified:

What I typically do - - and I've looked through my notes - - is I make my clients aware of the potential - - in cases like this, where I recognize that there might be a federal problem in the future, I just make them aware of the potential that, you know, irrespective of what we do in State Court, there could be a federal issue crop up later, but I don't really get into specifics about that.

He specifically denied telling Petitioner that he needed to plead guilty to avoid "federal consequences in this particular case." Trial counsel unequivocally denied that there was a

-10-

conversation with Petitioner indicating that if Petitioner did not plead guilty, the federal authorities would take the case, and Petitioner would face greater consequences.

We conclude that Petitioner has failed to show by clear and convincing evidence that his guilty plea was involuntarily or unknowingly entered, that he received ineffective assistance of counsel or that he was prejudiced by any alleged defective representation by counsel. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____

THOMAS T. WOODALL, JUDGE